# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ALFRAD BOYD,
    Plaintiff,

Case No. 1:17-cv-011
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), the Commissioner's response in opposition (Doc. 18), and plaintiff's reply memorandum (Doc. 19).

## I. Procedural Background

Plaintiff protectively filed an application for SSI on January 2, 2013, alleging disability since February 1, 2012. Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Anne Shaughnessy, which was held via video conference. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On October 8, 2015, the ALJ issued a decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform

2

the relevant previous employment, the burden shifts to the Commissioner to show that the

claimant can perform other substantial gainful employment and that such employment exists in

the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since January 2, 2013, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: Hodgkin['s] lymphoma; chronic obstructive pulmonary disease; depression; and borderline intellectual functioning (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except as follows: the [plaintiff] should never climb ladders, ropes, or scaffolds. Further, he should avoid concentrated exposure to temperature extremes, humidity, fumes, odors, dust, gases, and hazards. He is limited to simple repetitive tasks in an environment without demand for fast pace. The claimant could carry out tasks in a setting where duties are relatively static and changes can be explained. Finally, the [plaintiff] also requires a setting with infrequent and superficial interaction with the public.
>
> 5. The [plaintiff] has no past relevant work (20 CFR 416.965).
>
> 6. The [plaintiff] was born [in] . . . 1980 and was 32 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[1]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since January 2, 2013, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-23).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[1] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as cleaner (394,000 jobs available nationally), packager (335,000 jobs available nationally), and small parts assembler (234,000 jobs available nationally). (Tr. 22-23).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Error**

Plaintiff alleges the ALJ erred in weighing the opinions of the consultative examiners. Plaintiff contends the ALJ's decision to afford "little weight" to their opinions is not supported by substantial evidence, and the ALJ erred by giving the most weight to the opinions of the state agency non-examining psychologists. Plaintiff argues that as a result, the ALJ erred at Step Five of the sequential evaluation process when she relied on an improper hypothetical question to the VE to find plaintiff is not disabled.

**1. Weight to the medical source opinions**

Plaintiff alleges that the ALJ erred by according "little weight" to the opinions of the two consultative examiners, Dr. Albert Virgil, Ph.D., J.D., and Dr. Sarah Barwick, Psy.D. Plaintiff contends that the regulatory factors weigh in favor of according more weight to the consultative examiners' opinions than to those of the non-examining state agency psychologists.

Under the treating physician rule, an ALJ must give "controlling" weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." 20 C.F.R § 416.927(c)(2). Where, as here, there are no treating physician opinions, the ALJ must weigh the opinions of the other medical sources in accordance with certain regulatory factors. The opinion of a non-treating medical source is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(3)-(6). When warranted, the opinions of state agency medical and psychological consultants "may be entitled to greater weight than the opinions of treating or examining sources." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013) (citing SSR 96-6p, 1996 WL 374180, at *3). *See also Wisecup v. Astrue,* No. 3:10-cv-325, 2011 WL 3353870, at *7 (S.D. Ohio July 15, 2011) (Ovington, M.J.) (Report and Recommendation), *adopted*, 2011 WL 3360042 (S.D. Ohio Aug. 3, 2011) ("opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight"). The opinions of reviewing sources "can be given weight only insofar as they are supported by evidence in the case record." *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (citing SSR 96-6p, 1996 WL 374180, *2). Because a non-examining source has no examining or treating relationship with the claimant, the weight given the source's opinion depends on the degree to which the source provides supporting explanations for his opinion and the degree to which his opinion considers all of the pertinent evidence in the record, including the medical opinions of treating and other examining sources. 20 C.F.R. § 416.927(c)(3).

In this case, there are five medical opinions on plaintiff's limitations and ability to perform work-related activities. Two are from the consultative examiners, Drs. Virgil and Barwick. Three are from the state agency non-examining psychologists.

Dr. Virgil examined plaintiff in connection with a prior application for SSI disability benefits on September 6, 2012. (Tr. 465-470). Dr. Virgil performed a clinical examination and diagnosed plaintiff with adjustment disorder with depressed mood and cognitive disorder NOS. In assessing plaintiff's functional capacity, Dr. Virgil opined that although plaintiff understood and attempted to carry out instructions given him during the examination, "because of intellectual/cognitive impairment, he would not be able to do so in a work setting." (Tr. 469). With respect to plaintiff's ability to maintain attention, concentration, and persistence and to perform simple or multi-step tasks, Dr. Virgil opined that "Mr. Boyd's attention and concentration skills are impair[ed]. He probably would not perform multi step tasks." (*Id.*). He opined that plaintiff appeared amenable to supervision as he was cooperative during the examination but that "[s]uch would be problematic, however, as Mr. Boyd probably would not be able to carry out the job tasks. He has friends and seems able to interact adequately with coworkers." (*Id.*). Dr. Virgil also opined that "[b]ecause of intellectual/cognitive impairment, as well as depression, Mr. Boyd is not mentally or emotionally capable of responding to work setting pressures." (Tr. 470).

Dr. Barwick examined plaintiff on June 9, 2015, after the ALJ hearing at the request of the ALJ. (Tr. 930-935). Dr. Barwick performed a clinical interview and administered the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV). She also reviewed the previous report prepared by Dr. Virgil. (Tr. 930). Dr. Barwick noted plaintiff's chemotherapy and

radiation treatment for Hodgkin's Lymphoma in 2012. Plaintiff reported suffering memory loss and experiencing frequent fatigue as a result of chemotherapy and radiation treatment. Plaintiff reported he last worked in 2012 and was medically released to work in 2013. However, since being medically cleared, plaintiff reported no desire to work and had not completed any job applications. When asked how his mental health issues interfered with his ability to work, plaintiff reported he has difficulty understanding directions and multi-tasking. He stated that his problems with attention and concentration interfere with his ability to complete tasks such as remembering directions when driving. (Tr. 932). Plaintiff reported he is easily overwhelmed by chores and has difficulty completing tasks due to his problems with attention. (*Id.*). Dr. Barwick observed that plaintiff "appeared to be depressed and displayed [a] sad, downcast affect." (*Id.*). He did not appear to exaggerate or minimize his difficulties and appeared to put forth his best effort. Dr. Barwick stated that plaintiff's "complaints of limited energy, pain, and easy fatigability could be indicative of a somatic focus." (*Id.*).

Testing on the WAIS-IV revealed a full scale IQ of 79, which fell within the borderline range of intelligence or in the 8th percentile for plaintiff's age group. (Tr. 933). Dr. Barwick stated that plaintiff's performance was consistent with his reports of a special education background. Dr. Barwick opined that while test data indicated plaintiff is performing in the borderline range of intelligence, "there were significant discrepancies amongst his scores and it is likely that his overall FSIQ of 79 underestimates some of his abilities." (Tr. 934). Dr. Barwick diagnosed plaintiff with unspecified cognitive disorder and major depressive disorder, mild. (*Id.*)

Dr. Barwick assessed plaintiff's functional capacity and opined that plaintiff "lacks capacity" in his ability to understand, remember and carry out instructions. (Tr. 934). Dr. Barwick also assessed plaintiff's ability to maintain attention, concentration, persistence and pace, and to perform simple and multi-step tasks. Dr. Barwick stated, "Given his reports of memory impairment, as well as reports of failing to remember directions while driving or forgetting where he placed objects suggests that he lacks capacity in his ability to maintain attention and concentration or persistence and pace." (*Id.*). Dr. Barwick opined that plaintiff "maintains capacity" to respond appropriately to supervision and to coworkers in a work setting. (Tr. 935). With respect to plaintiff's capacity to respond appropriately to work pressures, Dr. Barwick opined that "[e]xamination findings indicate that he lacks capacity to appropriately cope with pressures related to a work setting." (*Id.*).

Dr. Irma Johnston, Psy.D., reviewed the record in connection with plaintiff's prior application for benefits on September 14, 2012. As part of her review, Dr. Johnston reviewed the psychological consultative examination performed by Dr. Virgil and determined that his opinion was entitled to "great weight." (Tr. 60). Dr. Johnston opined that plaintiff's understanding and memory limitations are such that he has some difficulties with multi-step or complex job duties, and he is best suited for simple and repetitive tasks. (Tr. 61). Dr. Johnston also opined that plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She opined that plaintiff's stress tolerance is limited but he could carry out simple, routine tasks and adapt to work settings in which duties are routine, predictable, and not fast-paced. (Tr. 62). Dr. Johnston

opined that plaintiff can adapt to settings where changes are infrequent and clearly explained. (Tr. 63).

In connection with plaintiff's current SSI application, Dr. Karen Steiger, Ph.D., reviewed the record on February 7, 2013. She found that Dr. Virgil's opinion was entitled to "other weight" because his findings were "not consistent with [plaintiff's] report of functioning or other evidence in the file." (Tr. 74). Dr. Steiger found plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions, in his ability to maintain attention and concentration for extended periods, in his ability to complete a normal workday or work week without interruptions from psychologically based symptoms, and in his ability to perform at a consistent pace without an unreasonable number or length of rest periods. (Tr. 77). She opined that plaintiff can understand, remember, and carry out instructions for 1-2 step tasks given his history of cognitive disorder and full scale IQ of 80 obtained at age 16; he can maintain attention, concentration, persistence and pace for 1-2 step tasks in an environment without demand for fast pace due to symptoms related to anxiety, cognitive disorder, history of difficulty with staying on task, and reports of difficulty handling stress; and he can carry out tasks in a setting where duties are relatively static and changes can be explained due to his cognitive disorder. (Tr. 77). Dr. Steiger opined that Dr. Virgil's opinion was an overestimate of the severity of plaintiff's restrictions and limitations and was "based only on a snapshot of [plaintiff's] functioning." (Tr. 79).

On reconsideration of plaintiff's current SSI application, state agency psychologist Dr. Paul Tangeman, Ph.D., affirmed the findings of Dr. Steiger. (Tr. 93-94).

The ALJ gave "great weight" to the medical opinions of the state agency reviewing psychologists. (Tr. 21). The ALJ found those opinions are well supported and consistent with the substantial evidence of record, and the record contained no subsequent clinical findings that would support a departure from their conclusions on plaintiff's mental functional capacity. (Tr. 21).

The ALJ gave little weight to Dr. Virgil's September 2012 functional capacity assessment. (Tr. 21). The ALJ reasoned that Dr. Virgil's clinical evaluation yielded little in the way of significant abnormalities. (*Id.*). The ALJ also found that Dr. Virgil "did not have the luxury of reviewing the collective evidence of record, which shows a level of functioning consistent with [the] finding reached in this decision." (Tr. 21). Likewise, the ALJ gave little weight to Dr. Barwick's conclusions on plaintiff's ability to function from a mental standpoint. (*Id.*). The ALJ determined that Dr. Barwick's opinions were based almost entirely on plaintiff's subjective complaints. (*Id.*). In addition, the ALJ reasoned that the record failed to support complaints or lingering problems from plaintiff's prior cancer treatment, yet Dr. Barwick accepted plaintiff's allegations of residual mental difficulties associated with such treatment. (*Id.*). In addition, the ALJ noted that none of plaintiff's treating physicians "ever referred to any type of neurocognitive disorder." (*Id.*). Finally, the ALJ noted that plaintiff advised Dr. Barwick that he had been released to work, but he had no desire to seek employment. (Tr. 22).

Plaintiff contends that the applicable regulatory factors weigh in favor of according more weight to the opinions of the consultative examiners than to the opinions of the state agency psychologists. Plaintiff alleges that both Dr. Virgil and Dr. Barwick actually examined plaintiff; both examiners were specialists in mental health; and both examiners "came to identical

conclusions" regarding plaintiff's functional capacity, demonstrating consistency and support for each other's opinions. *See* 20 C.F.R. § 416.927(c)(1), (4), (5). However, the nonexamining state agency psychologists are also specialists in mental health and their opinions on plaintiff's functional capacity were essentially the same. Thus, plaintiff's argument that the ALJ erred in giving the most weight to the reviewing sources rests mainly on the general rule that more weight is given to examining sources than nonexamining sources.

While "the opinions of nontreating [examining] sources are generally accorded more weight than nonexamining sources, it is not a per se error of law, as [plaintiff] suggests, for the ALJ to credit a nonexamining source over a nontreating source. Any record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (citing 20 C.F.R. §§ 404.1527, 416.927; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)). For the reasons explained below, the ALJ's decision to accord less weight to the opinions of Drs. Virgil and Barwick than to those of the state agency psychologists is substantially supported by the record.

The ALJ reasonably determined that Dr. Virgil's own examination findings were inconsistent with his opinions on plaintiff's functional capacity. (Tr. 21). As the ALJ noted, Dr. Virgil's clinical evaluation yielded little in the way of significant abnormalities. (Tr. 21). Dr. Virgil reported that plaintiff adequately comprehended and carried out instructions and tasks during the mental status examination. (Tr. 21, citing Tr. 467). Dr. Virgil also reported that plaintiff's attention was sufficient for responding to questions and he exhibited a freedom from distractibility. (Tr. 21, citing Tr. 468). Plaintiff appeared alert and responded to questions

without apparent difficult, established eye contact, and when appropriate was spontaneously verbal. (Tr. 19, citing Tr. 468). The ALJ also considered Dr. Virgil's report that plaintiff's overall clinical presentation and responses to questions indicated an ability to make sound, common sense judgments. (Tr. 19, citing Tr. 468).

The ALJ also considered that Dr. Virgil did not have all of the record evidence before him in assessing plaintiff's functional capacity. (Tr. 21). As the ALJ noted, Dr. Virgil opined that plaintiff's "intellectual/cognitive" impairment contributes to his inability to maintain competitive employment. (Tr. 21, citing Tr. 469-70). However, Dr. Virgil failed to offer an Axis II diagnosis of even borderline intellectual functioning in his report. (Tr. 21, citing Tr. 468).

Plaintiff argues the ALJ should not have considered Dr. Virgil's opinions "inaccurate or flawed" absent another "examining" mental health professional's contrary opinion. Plaintiff is correct that an ALJ is not qualified to make medical judgments. (Doc. 12 at 18, citing *Winning v. Comm'r of Soc. Sec.,* 661 F. Supp.2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ does not have the expertise to make medical judgments."). Here, however, the ALJ did not rely on her own "medical" judgment in weighing Dr. Virgil's opinion. Rather, the ALJ relied on the contrary medical judgments from the state agency reviewing psychologists, all of whom considered Dr. Virgil's report and acknowledged plaintiff had limited work stress tolerance and moderate limitations in attention, concentration, and pace. However, each of the state agency psychologists concluded based on Dr. Virgil's findings and the other evidence of record that plaintiff was still capable of simple, routine work tasks and could adapt to work settings in which duties are routine, predictable, and

not fast-paced. Where, as here, the ALJ is faced with conflicting medical opinions, it is the ALJ's duty to resolve that conflict. *Kalmbach v. Commissioner of Social Sec.,* 409 F. App'x 852, 859 (6th Cir. 2011). The ALJ did not use her own "medical" judgment in discounting Dr. Virgil's opinions.[2]

Plaintiff also takes issue with the ALJ's reliance on Dr. Virgil's failure to review the entirety of the record and alleges the ALJ placed too much emphasis on plaintiff's activities of daily living, which the ALJ found demonstrated a higher degree of functioning than Dr. Virgil assessed. (Doc. 12 at 18). However, the ALJ did not equate plaintiff's ability to perform daily activities with the ability to perform full time work. Nor did she expressly discuss plaintiff's daily activities in discounting Dr. Virgil's opinion. Instead, the ALJ considered plaintiff's activities as one factor among many in assessing plaintiff's functional capacity. The ALJ gave valid reasons for giving little weight to Dr. Virgil's opinion. *See Norris*, 461 F. App'x at 440 (citing *Ealy*, 594 F.3d at 514-15) (upholding ALJ's decision not to give weight to nontreating source because the opinion was inconsistent both with source's own findings and the overall record).

In addition, the ALJ reasonably found that Dr. Barwick's opinion was entitled to little weight. The ALJ properly considered the extent to which Dr. Barwick's opinion was supported by the objective and clinical evidence, as opposed to plaintiff's subjective allegations alone. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Objective evidence in the psychiatric/psychological context includes "medical

---

[2] Plaintiff suggests the ALJ erred by not relying on the contrary opinion of another "examining" medical source

signs," 20 C.F.R. § 416.912(b)(1), which are defined as *psychological abnormalities which can be observed, apart from your statements* (symptoms). . . . Psychiatric signs are *medically demonstrable* phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 416.928(b). Here, it appears that Dr. Barwick relied primarily on plaintiff's subjective allegations in rendering her functional assessment. Dr. Barwick related that plaintiff was:

> seeking disability benefits due to cognitive and emotional impairment secondary to having undergone chemotherapy. According to Mr. Boyd, he suffers from daily depression and experiences frequent thoughts of suicidal ideation. He denied any suicidal intent. He reported having been diagnosed with Hodgkin's Lymphoma in 2011 and reported that he has been in remission for six months. He stated that chemotherapy caused deficits in his attention and concentration, as well as related memory problems. He indicated difficulty completing tasks or staying focused on task completion. He reported poor sleep and frequent fatigue, adding that he is withdrawn socially since undergoing chemotherapy. He reported that he has not worked since 2012 and has little desire to do so. Test data indicated that he is performing in the borderline range of intelligence; however, there were significant discrepancies amongst his scores and it is likely that his overall FSIQ of 79 underestimates some of his abilities.

(Tr. 933-34). In assessing plaintiff's ability to maintain attention, concentration, persistence and pace, Dr. Barwick appears to have relied on plaintiff's self-reports:

> Although the claimant did not ask that questions be repeated, he presented with depressed mood and downcast affect. He reported difficulties with attention and concentration, as well as motivational problems. Given his reports of memory impairment, as well as reports of failing to remember directions while driving or forgetting where he has placed objects suggests that he lacks capacity in his ability to maintain attention and concentration or persistence and pace.

(Tr. 934). In assessing plaintiff's ability to respond appropriately to work pressures in a work setting, Dr. Barwick noted plaintiff was "cooperative" but "depressed," and stated,

---

when discounting Dr. Virgil's opinion. Plaintiff has cited to no authority in support of this proposition.

"When describing his memory difficulty, he failed to mention any coping strategies or attempts to manage his difficulties such as making lists. He verbalized experiencing daily suicidal ideation. . . . ." (Tr. 935). Thus, the ALJ accurately noted that Dr. Barwick's restrictions were premised almost entirely on plaintiff's subjective complaints.

Plaintiff disputes the ALJ's reliance on his less-than-credible subjective complaints to discount Dr. Barwick's opinion. Plaintiff alleges he was forthcoming and did not exaggerate his problems. Rather, he admitted he had a high pain threshold; he could stand for prolonged periods of time; he could lift his 40 pound daughter; he got along with others; and he got out of the house for exercise by mushroom hunting. (Doc. 12 at 19). Plaintiff alleges that "other than pointing to the fact he consistently endorsed no side effects from his cancer treatments, the ALJ's decision is devoid of other instances in which Plaintiff appeared to 'exaggerate' his problems." (*Id.*).

Plaintiff misperceives the gist of the ALJ's reasoning. Plaintiff reported to Dr. Barwick that chemotherapy caused deficits in his attention and concentration, as well as related memory problems, and Dr. Barwick relied on these subjective statements in assessing plaintiff's functional capacity. (Tr. 934). As the ALJ reasonably noted, however, the other record evidence does not support plaintiff's complaints of attention, concentration, and memory problems or any other lingering problems from his prior cancer treatment. (Tr. 21). The ALJ was "particularly struck by the fact that none of the [plaintiff's] treating physicians ever referred to any type of neurocognitive disorder." (*Id.*). Indeed, the Court's review of the record fails to reveal that any of plaintiff's cancer treatment, pulmonary, or family practice records indicate problems with memory loss or neurocognitive impairment. The ALJ appropriately considered this lack of

consistency and supportability of plaintiff's subjective complaints, which Dr. Barwick relied upon, in assessing Dr. Barwick's opinion under the regulatory factors. *See Norris*, 461 F. App'x at 439-400 (noting the plaintiff's complaints to the consultative examiner were not reflected in his numerous visits with his treating physician). Thus, the ALJ reasonably assessed the extent to which Dr. Barwick relied on plaintiff's subjective complaints in giving little weight to Dr. Barwick's opinion.

Plaintiff also disagrees with the ALJ's conclusion that "[g]iven [plaintiff's] lack of motivation to obtain employment, it is reasonable to assume some ulterior motive when he alleged significant residual side effects from cancer therapy." (Doc. 12 at 19, citing Tr. 19). Plaintiff contends that "a lack of motivation is actually indicative of an underlying mental health problem and does not necessarily support the contention that he was simply too lazy to work." (Doc. 12 at 19-20). While lack of motivation may be a symptom of depression, the contrary conclusion the ALJ drew from plaintiff's admission to Dr. Barwick is not unreasonable "given the other evidence of record [that] directly conflicts with the allegations [plaintiff] made to Dr. Barwick." (Tr. 19). As the ALJ noted, plaintiff routinely denied any significant problems during follow-up care with his oncologist, pulmonologist, and family care provider. (*Id.*). This is substantial evidence supporting the contrary conclusion drawn by the ALJ in this case for discounting Dr. Barwick's assessment of plaintiff's functional capacity.

The ALJ adequately explained her justifications for the weight attributed to the examining and state agency psychologists. Those reasons are substantially supported by the record. Therefore, plaintiff's assignment of error is overruled.

Accordingly, the decision of the Commissioner is **AFFIRMED** and this matter is

**CLOSED** on the docket of the Court.


Date: 3/28/18

Karen L. Litkovitz
United States Magistrate Judge